IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

JAMES B. HILTON, )
)
        Plaintiff, )
)
vs. ) Case No. 04-0852-CV-W-ODS
)
ETHICON, INC., a subsidiary of )
JOHNSON & JOHNSON, )
)
        Defendant. )

## ORDER AND OPINION GRANTING DEFENDANT'S MOTION TO STRIKE THE TESTIMONY OF FREDERICK HETZEL AND GRANTING SUMMARY JUDGMENT

Pending are Defendant's Motion to Strike the Expert Testimony of Frederick Hetzel (Doc. #79) and Defendant's Motion for Summary Judgment (Doc. #77). For the following reasons, the motions are granted.

## I. BACKGROUND

A. History of Injuries

On October 2, 2000, Plaintiff was a thirty-eight year old police officer with the City of Blue Springs, Missouri. Plaintiff brushed up against a bike hanging on a hook in the police locker room and caused the bike to fall. While attempting to catch the bike, he fell to the floor. Consequently, Plaintiff sought medical treatment for a severe pain in his leg. A subsequent MRI revealed a torn anterior cruciate ligament (ACL), a fracture of the tibial plateau and a tear in the medial meniscus. Sometime between July 26 and August 9, 2001, Plaintiff was involved in a car accident in which he hit his brakes hard with his right foot. Following the accident, Plaintiff experience soreness in his right knee. On July 17, 2002, Plaintiff stepped off of a curb and twisted his left ankle. While attempting to catch himself, he stuck out his right knee and struck the side of his truck, causing sharp pains in his knee.

B. Medical Treatment

On January 11, 2001, Dr. Thomas Hartley performed surgery on Plaintiff, including ACL reconstruction, medial plica excision and partial lateral meniscectomy. During the surgery, the two larger incisions for the ACL reconstruction were irrigated with normal saline solution, laced with Ancef (an antibiotic) and closed with Vicryl® sutures. The product code and lot number of the sutures are unknown. On January 17, 2001, Dr. Hartley observed no evidence of drainage from the incisions and Plaintiff's white blood cell count was within normal limits. He did not believe Plaintiff was suffering from infection. On January 18, 2001, Dr. Hartley performed surgery on Plaintiff to evacuate a hematoma and remove the Vicryl® sutures used in the January 11 surgery. Cultures were taken, showing no bacteria or infection was present. On February 9, 2001, Dr. Hartley treated Plaintiff for a stitch abscess, which looks like a pimple where the suture is. Dr. Hartley last treated Plaintiff on July 18, 2001 and did not consider Plaintiff to have a significant history of post-operative complications.

Dr. Jennifer Finley treated Plaintiff from July 6, 2001 through November 26, 2001. She never treated Plaintiff for an infection. Dr. Richard Bene, a plastic surgeon, treated Plaintiff from December 19, 2001 through April 3, 2002. He did not see any sign of infection or any abnormal inflamation. He testified he would not classify a stitch abscess as a true wound infection. Dr. Richard Hood, an orthopedic surgeon, first treated April 4, 2002 through November 7, 2002. On April 17, 2002, Dr. Hood performed surgery on Plaintiff's right knee, including exploratory arthroscopy, resection of a flap tear of the anterior horn of the medial meniscus, resection of scar tissue, and excision of medial plica. Defendant's expert Daniel Sexton believes Plaintiff did not have a post-operative infection.

C. Recalled Sutures

On February 26, 2001, Defendant sent out an "Urgent Voluntary Product Recall" due to a sterile package defect. The specified lots included Vicryl® sutures. The notice stated the affected products would have been received by the hospitals after January 8, 2001. According to Mark Honea, Manager of Regulatory Compliance for Defendant in

2

2001, domestic shipments of the limited lots of Vicryl® sutures did not begin until January 22, 2001. Defendant's expert Dr. William Rutala testified that no microorganisms were recovered from 300 sutures when simulated product testing was performed.

## II. DISCUSSION

When expert testimony is proffered, the trial court must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993). According to Daubert, in "its attempt to determine whether proffered scientific evidence is scientifically valid, a trial court should ordinarily consider, among other factors, the following: (1) whether the underlying theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the technique has a known or knowable rate of error; (4) whether the theory or technique is generally accepted in the relevant community." Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1082 (8th Cir. 1999). "This list of factors is not exclusive, and the trial court is left with great flexibility in adapting its analysis to fit the facts of each case." Id. In some cases one or more of the factors may be of little to no value in assessing the reliability of the expert's testimony; Daubert requires consideration of those factors that are relevant in light of the nature of the opinion, the field of expertise, and the circumstances of the case at bar. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999); Jaurequi, 173 F.3d at 1083.

### B. Frederick Hetzel

Hetzel proposes to testify about six topics related to the recall and design of Vicryl® sutures. However, nothing presented to the Court identifies the opinions Hetzel has formulated. Further, nothing presented to the Court reveals how those opinions relate to the issues before the Court. If the Court does not know what the opinions are, the Court cannot find that the opinions are admissible at trial. In the Court's August 28, 2006 Order, the Court found Dr. Hetzel failed to comply with the disclosure

3

requirements set forth in Rule 26(a) of the Federal Rules of Civil Procedure and paragraph 6 of the Scheduling and Trial Order (see Doc. #15), and directed Plaintiff to supplement Hetzel's report by September 28, 2006. Rather than supplement the expert report, Plaintiff filed pleadings asking the Court to modify the Scheduling Order and raised discovery issues; the Court denied Plaintiff's motion and reminded the parties the deadline for raising discovery disputes was February 15, 2006. Plaintiff has not supplemented the report of Dr. Hetzel as directed. Accordingly, Defendant's Motion to Strike is granted due to Plaintiff's failure to abide by the Court's Orders.

Summary Judgment

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Plaintiff alleges defective Vicryl sutures caused complications he experienced following his knee surgeries. The general elements of a negligence action are (1) a legal duty of the defendant to protect the plaintiff from injury, (2) breach of the duty, (3) proximate cause, and (4) injury to the plaintiff. Stark v. Lehndorff Traders Venture, 939 S.W.2d 43, 45 (Mo. App.1997). Under Missouri law, to prevail of a claim of negligence

Plaintiff must prove that the use of the Vicryl sutures directly caused or contributed to cause all or some of his injuries. Bone v. Ames Taping Tool Sys., Inc., 179 F.3d 1080, 1082 (8th Cir. 1999). Plaintiff must "exclude other causes by presenting substantial evidence that a particular cause for which defendant is responsible for plaintiff's injuries." Id. Plaintiff relies on two experts, Dr. Kerr, who was previously excluded in the Court's August 28, 2006 Order and Dr. Hetzel, who was excluded above. Without such expert testimony, Plaintiff cannot establish causation.

Moreover, it is undisputed that Plaintiff's surgery was performed on January 11, 2001 and domestic shipments of the limited lots of recalled Vicryl® sutures did not begin until January 22, 2001. Regardless of whatever else Dr. Hetzel might say, it is not possible for him to causally connect the recalled Vicryl® sutures to surgery performed before the sutures were available. With or without the testimony of Dr. Hetzel, Plaintiff's claim fails.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Exclude the Expert Testimony of Frederick Hetzel is granted and Defendant's Motion for Summary Judgement is granted.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: February 16, 2007    UNITED STATES DISTRICT COURT